IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARCIA D. WILSON, | ) | CIVIL NO.  06-00520 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING STATE OF |
| | ) | HAWAII'S MOTION FOR |
| v. | ) | SUMMARY JUDGMENT |
| | ) | |
| STATE OF HAWAII, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Marcia D. Wilson ("Plaintiff") asserts that her employer, Defendant State of Hawaii, Judiciary ("Defendant"), retaliated against her by transferring her work location and giving her less desirable assignments after she filed complaints with the Judiciary's Affirmative Action Office ("AAO") and the EEOC.  Plaintiff's Complaint alleges a single count for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Currently before the court is Defendant's Motion for Summary Judgment.  Based on the following, the court GRANTS Defendant's Motion for Summary Judgment.

///

///

## II.  BACKGROUND

### A.      Factual Background

The parties do not dispute the majority of the facts for purposes of this motion, *see* Pl.'s Concise Statement of Facts 2, and unless cited otherwise, the following facts are from Defendant's Concise Statement of Facts:

Plaintiff is employed by the State of Hawaii, Judiciary, as a Clerk Typist II (SR-8) with the Ho'okele Navigation Program ("Ho'okele Program"). The Ho'okele Program is comprised of four courthouse stations -- the Family Court Service Center, the Circuit Court Concierge, the District Court Civil Division Service Center, and the District Court Concierge.  Diane Kawakami Decl. ¶ 3.

Plaintiff was first assigned to the Family Court Service Center.  Her position description states that her major duties and responsibilities include: (1) greeting and assisting court users, answering telephone calls, and disseminating uncontested divorce packets (60%), (2) drafting court memoranda, reports, and other materials (20%), (3) maintaining the supply of court forms (10%), (4) maintaining office supplies (5%), and (5) performing other duties (5%).  Def.'s Ex. F.

On February 22, 2005, Plaintiff filed a discrimination complaint with the AAO, alleging that her co-worker, Lloyd Wong, sexually harassed her.  Due to Plaintiff's AAO complaint and the pending investigation, Plaintiff was relocated to the Circuit Court Concierge effective February 25, 2005.  At the Circuit Court Concierge, Plaintiff was tasked with cataloguing mental health and custody reports, which are related duties within her position description.

On March 1, 2005, Plaintiff informed Diane Kawakami, who supervises the Ho'okele Program, that she could not work at the Circuit Court Concierge because of second-hand cigarette smoke that drifted into the building from the outdoor smoking area.  Plaintiff subsequently called in sick for the next three days.[1]  Due to Plaintiff's complaint about the smoke, Kawakami made arrangements for Plaintiff to use a vacant desk in the Children and Youth Services ("CYS") Office to complete her cataloguing assignment, which Plaintiff started on March 7, 2005.

On March 8, 2005, Plaintiff filed a charge of discrimination with the EEOC.  The EEOC charge described the alleged sexual harassment by Wong, and asserted that Plaintiff was retaliated against by being reassigned to the Circuit

---

[1]  On September 19, 2005, Plaintiff filed an Employee's Claim for worker's compensation benefits for a sinus infection she alleges was caused by this second-hand smoke inhalation.  This claim was found work related and compensable on January 27, 2006.

Court Concierge to perform duties of lesser desirability.  Def.'s Ex. B.  Plaintiff

further expressed concerns that these reassignments would hurt her ability to be

considered for promotions to other jobs that she had applied for within the Circuit

Court.  *Id.*

Around April 2005, the internal investigation regarding Plaintiff's

complaint of sexual harassment was completed, *see* Def.'s Ex. A 93-94, 100, and

on April 12, 2005, Kawakami and Plaintiff discussed her return to work at the

Family Court Center.  Kawakami Decl. ¶ 23.  Plaintiff instead remained at the

CYS Office, *id.*, and on May 24, 2005, Kawakami received a faxed note from Dr.

Joan Koff, restricting Plaintiff from working in an office with Wong.  Because the

CYS Office was in the process of filling the vacant position for the desk Plaintiff

occupied, Plaintiff had complained about the second-hand smoke at Circuit Court

Concierge, and Plaintiff was restricted from working with Wong, Kawakami

moved Plaintiff to a second temporary location at the Court Reporters' Office in

the Circuit Court building.

On August 23, 2005, Kawakami and Leighton Oshiro, Division Chief

of the Workers' Compensation Division, met with Plaintiff to discuss her return to

the Circuit Court Concierge effective August 24, 2005.  On August 29, 2005,

Kawakami received a doctor's note restricting Plaintiff from working in an

4

environment where she might be exposed to smoke.  As a result, Plaintiff was notified that she would be relocated to the District Court Concierge effective September 7, 2005.

On September 6, 2005, Plaintiff filed a second charge of discrimination with the EEOC, alleging that her reassignment to the District Court Concierge was in retaliation for filing her earlier EEOC complaint.  Def.'s Ex. C. Plaintiff began work at the District Court Concierge on September 7, 2005, and was assigned to type foreign adoption and paternity documents, tally daily count logs from the Family Court Service Center, enter the tally onto a spreadsheet, and answer telephones.  This work is considered within her work unit and position description.

Plaintiff continued work at the District Court Concierge until May 18, 2006, when she was placed on leave with pay, pending an internal investigation regarding allegations made against her by a co-worker.[2]  Kawakami Decl. ¶ 36. Due to this incident, Plaintiff was ultimately suspended for three working days, December 5-7, 2006.

---

[2]  During her leave, Plaintiff was informed via letter of changes being made at the Circuit Court Concierge that would address the second-hand smoke problem.

5

Plaintiff was scheduled to return to work at the Family Court Service Center on December 8, 2006, and report to Kawakami.  Plaintiff's return date was delayed until January 2, 2007, and at that time, she went back to the Circuit Court Concierge instead of the Family Court Service Center.  Kawakami Decl. ¶ 42. Plaintiff told Kawakami that her doctor's notes indicated that she could not work with Wong, and Kawakami responded that she had not received any current notes with that restriction and that Plaintiff was directed to report at the Family Court Service Center.  *Id.* ¶ 43.  Plaintiff was absent from work after January 19, 2007, and returned on November 5, 2007 without medical limitations or restrictions.

At all times, Plaintiff held the same position and salary as when she was working at the Family Court Service Center.

## B.    Procedural Background

On September 25, 2006, Plaintiff filed her Complaint, alleging a single claim of retaliation in violation of Title VII.[3]

On February 13, 2008, Defendant filed a Motion for Summary Judgment.  On March 27, 2008, Plaintiff filed an Opposition, and also requested a Rule 56(f) continuance.  On April 14, 2008, the court granted Plaintiff's Request

---

[3]  In addition to Defendant, the Complaint named as defendants Linda Lingle in her capacity as Governor of Hawaii, and William Santos in his capacity as Chief Court Administrator.  Plaintiff later agreed to dismiss these parties.

for Rule 56(f) Continuance, and deemed withdrawn Defendant's Motion for

Summary Judgment.  Doc. No. 46.

On June 30, 2008, Defendant filed the present Motion for Summary

Judgment.  On August 5, 2008, Plaintiff filed her Opposition, and Defendant filed

its Reply on August 12, 2008.  A hearing was held on August 20, 2008.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of*

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (*citing Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has

7

carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (A party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV. <u>ANALYSIS</u>

Defendant argues, among other things, that summary judgment should be granted because Plaintiff has failed to raise a genuine issue of material fact

supporting her prima facie case of retaliation.  Based on the following, the court agrees.[4]

## A.    Legal Framework for Plaintiff's Prima Facie Case of Retaliation

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) ("Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." (citations and quotation signals omitted)).

Pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Plaintiff has the initial burden to establish a prima facie case of retaliation.  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).  To make a prima facie showing of retaliation, Plaintiff must show that (1) she engaged in a protected activity; (2) Defendant took an adverse action against her; and (3) there was a

---

[4]  Because the court finds that Plaintiff has failed to establish a genuine issue of material fact to support at least one element of her prima facie case, the court does not address Defendant's other arguments for summary judgment.

causal link between her involvement in the protected activity and the adverse personnel action undertaken by Defendant.[5] *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (citation omitted).

## B.    Materially Adverse Employment Action

Defendant argues that Plaintiff's moves within the Judiciary were not materially adverse employment actions because she remained in her position, performed work within her position description, and made the same salary. *See* Def.'s Mot. 19-20. Based upon the evidence presented, the court finds that Plaintiff has not established a genuine issue of material fact to support this element of her prima facie case.[6]

---

[5] Alternatively, Plaintiff may "proceed by simply producing 'direct or circumstantial evidence demonstrating that a [retaliatory] reason more likely than not motivated the employer.'" *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008) (*quoting Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)). Because Plaintiff did not produce such evidence, the court applies the *McDonnell Douglas* burden-shifting framework.

[6] Because the court finds that Plaintiff has failed to carry her initial burden to establish a genuine issue of material fact that she suffered an adverse employment action, the court does not address the other elements of her prima facie case.

In *Burlington*, the Supreme Court explained that to show an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (citation and quotation signals omitted). Specifically addressing how courts should analyze reassignment of job duties, *Burlington* recognized that a change in job duties "is not automatically actionable," but may, under certain circumstances, constitute an adverse employment action -- "[c]ommon sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Id.* at 70-71. Determining whether reassignment of job duties is materially adverse "depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."'" *Id.* at 71 (*quoting Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998)).

Applying this standard, *Burlington* found that White, a railroad employee, had presented sufficient evidence for a jury to conclude that the defendant had retaliated against her by reassigning her from forklift duty to

11

standard track laborer tasks after reporting sexual harassment.  *Id.* at 71.

Specifically, based upon evidence that "track labor duties were 'by all accounts

more arduous and dirtier'; that the 'forklift operator position required more

qualifications, which is an indication of prestige'; and that 'the forklift operator

position was objectively considered a better job and the male employees resented

White for occupying it,'" the Supreme Court concluded that the "a jury could

reasonably conclude that the reassignment of responsibilities would have been

materially adverse to a reasonable employee." *Id.* at 71.

Applying the principles of *Burlington*, the court finds that Plaintiff,

who carries the burden to establish her prima facie case under the *McDonnell*

*Douglas* framework, has come forward with absolutely no evidence addressing

how her assignments and relocations would discourage an employee such as

Plaintiff from bringing discrimination charges.  Viewing the evidence in a light

most favorable to Plaintiff, the only evidence on the record regarding whether

Plaintiff suffered a materially adverse action is that Defendant transferred

Plaintiff's work locations, and gave her assignments that are described as 10% of

her normal job duties in her position description.[7]  Despite these changes,

---

[7]  Although not submitted to the court by Plaintiff, the court notes that in her interrogatory answers, Plaintiff states that "I was originally moved to 777 Punchbowl St. in 2002 with

(continued...)

Plaintiff's job position and salary remained the same.  This evidence in a vacuum provides the court no indication of how (or even whether) these changes affected her work and likelihood of promotion.[8]  For example, Plaintiff presented no evidence that her reassignments were objectively less desirable or involved longer hours or more arduous duties than work she normally performed, or that performing these assignments rather than other duties within her position description would hurt her chances for promotion.

The evidence presented simply does not create a fact question that Plaintiff suffered a materially adverse employment action -- the court cannot speculate how a reasonable employee would view these changes.  As *Burlington* stressed, determining whether reassignment constitutes an adverse action "depends upon the circumstances of the particular case."  *Id.*  Plaintiff, however, put forth no evidence other than the mere fact that she was performing duties that are described as 10% of duties in her position description, and that her location changed.  To

---

[7](...continued)
promises from Paul Kaneshiro at the head fiscal office that I would be placed in a higher position if I stayed on there."  Def.'s Ex. D at 4.  The court finds that this statement does not create a genuine issue of material fact of an adverse employment action.  As an initial matter, it is unclear whether Plaintiff means that she would be promoted only if she stayed with the Ho'okele Program or the same specific location.  More importantly, Plaintiff does not dispute that she was not assigned to the Ho'okele Program until October 2003.  Kawakami Decl. ¶ 9; Def.'s Ex. E.

[8]  Indeed, Plaintiff has not even addressed whether prior to her move, her duties were in fact allocated as provided in her position description.  Accordingly, it is unclear from the record whether her assignment even constituted a change in her every-day duties.

find that a fact question exists based on this record would mean that *any* transfer and/or change in tasks raises a genuine issue of material fact of a materially adverse action.  The caselaw does not support such a broad proposition.[9]  *See id.*; *Ray v. Henderson*, 217 F.3d 1234, 1241 & n.4 (9th Cir. 2000) (discussing that "transfer to another job of the same pay and status *may* constitute an adverse employment action," and that the Ninth Circuit has not held "that a lateral transfer can *never* be an adverse action" (emphasis added)); *see also Tudor Delcey v. A-Dec, Inc.*, 2008 WL 123855, at *11 (D. Or. Jan. 9, 2008) (granting summary judgment on Plaintiff's claim that Defendant retaliated against him by assigning him from woodworking to the laminate area because beyond his testimony that he was "'unhandy,'" he "provided no evidence to support a finding that a reasonable employee would find the change to be materially adverse"); *Celeo Echenique v. Tucson Unified Sch. Dist.*, 2008 WL 65590, at *12 n.11 (D. Ariz. Jan. 4, 2008) ("In addition, it is unlikely that Echenique's transfer from the HVAC Department to a Building Engineer position bearing the same salary, hours and pay grade and

---

[9]  Plaintiff cites to *Hillig v. Rumsfeld*, 381 F.3d 1028 (10th Cir. 2004), for the proposition that any reassignment with significantly different responsibilities is an adverse employment action, and *Hashimoto v. Dalton*, 118 F.3d 671 (9th Cir. 1997), as showing that any personnel action, even if inconsequential, is an adverse action when motivated by retaliatory animus.  *See* Pl.'s Opp'n 3-4.  *Burlington*, however, clearly states that "[t]o be sure, reassignment of job duties is not automatically actionable."  *Burlington*, 548 U.S. at 71.  "Context matters" according to the Supreme Court, *id.* at 68, and Plaintiff has utterly failed to provide the court with any context.

14

necessitated by doctor's orders constituted an adverse employment action.

Although courts disfavor transferring a person who is the subject of unlawful

discrimination or retaliation, as noted above, Echenique has not demonstrated

either." (citations omitted)); *contra Moorehead v. Chertoff*, 2007 WL 737370, at

*3 (W.D.Wash. Mar. 5, 2007) (denying defendant's motion for summary judgment

where Plaintiff put forth evidence that her reassignment of duties was adverse

because her original duties provided enhanced on-the-job experience, and would

qualify her for an internal promotion).

Plaintiff's Opposition only highlights that Plaintiff has failed to come

forward with any evidence to support that these job changes constitute an adverse

employment action.  Although Plaintiff *argues* that the reassignment "severely

restricted her duties so as to render her less desirable for promotion over other

Clerk Typist II candidates," Pl.'s Opp'n 2, she presents no *evidence* -- no

declaration, no deposition testimony, no documents -- that supports this

statement.[10]  Plaintiff cannot rely on mere arguments to overcome summary

---

[10]  In her Opposition, Plaintiff cites to a declaration stating that assigning her work "that comprises only 10% of her position description negatively affects her ability to compete with other employees for a promotion, which she intended to do given promises that were made to her in 2003 that she would be promoted."  *See* Pl.'s Opp'n 3.  Plaintiff, however, submitted no declaration in support of her Opposition, and included no such statement in her Concise Statement of Facts.  To the extent that Plaintiff refers to the declaration filed in opposition to Defendant's first Motion for Summary Judgment, this declaration is not part of the record before

(continued...)

judgment.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (stating that the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial"); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988) ("In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion should be granted."); *see also Tarin v. County of L.A.*, 123 F.3d 1259, 1265 (9th Cir. 1997) ("Because [plaintiff] points to nothing in the record, other than her own conclusory statements, to refute the County's explanations for its decisions, we affirm the district court's grant of summary judgment to defendants with respect to [plaintiff's] claims of unlawful retaliation.").

Indeed, this lack of evidence was precisely the reason Plaintiff asked for, and the court granted, Plaintiff's previous Rule 56(f) continuance on Defendant's first Motion for Summary Judgment.  In his declaration supporting the Rule 56(f) , Plaintiff's counsel conceded that:

---

[10](...continued)
the court for this motion.  Further, even if the court did include this declaration in its analysis, it does not support Plaintiff's argument.  Plaintiff's declaration states that she "was fearful that the assignment so severely restricted my duties as to render me less desirable for promotion . . . ."  Doc. No. 42, Pl.'s Decl. ¶ 2.  *Burlington* sets forth an objective, not subjective standard, *Burlington*, 548 U.S. at 71, and the declaration provides no facts from which an objective analysis can be undertaken.

16

> Presently there are insufficient facts essential to justify Plaintiff's opposition to the instant motion regarding whether performance of job functions that consist of only 10% of the job description does in fact negatively affect an applicant's prospects for promotion when compared to other applicants of the same level who have performed, or are performing at the time of application, over 50% of their current job functions and responsibilities.

Doc. No. 42, DeWaele Decl. ¶ 3.  Given that Plaintiff presented no evidence regarding the effect of these job changes, the court is left with the conclusion that Plaintiff was unable to find any evidence regarding these changes between the time of the Rule 56(f) continuance and Defendant's present motion.  As admitted by Plaintiff's counsel, there were insufficient facts to support that Plaintiff's change in duties negatively affected her promotion prospects at the time of the Rule 56(f) continuance, and it appears that nothing since that time has changed this conclusion.

Plaintiff has failed to carry her burden to raise a genuine issue of material fact of an adverse employment action.  The court therefore GRANTS Defendant's Motion for Summary Judgment.

///

///

///

# V.  <u>CONCLUSION</u>

For the reasons above, the court GRANTS Defendant's Motion for Summary Judgment.  Because there are no claims remaining, the Clerk of Court is ORDERED to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 26, 2008.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Wilson v. State of Hawaii*, Civ. No. 06-00520 JMS/BMK, Order Granting State of Hawaii's Motion for Summary Judgment